*KEARNEY LAW LLC*
**4 SOUTH ORANGE AVE., STE 286**
**SOUTH ORANGE, NJ 07079**
**862-216-9250**
dkearney@kearneylawllc.com

**ATTORNEYS FOR PLAINTIFF**
Acrison, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Civil Action No.

| | |
|---|---|
| ACRISON, INC., | : |
| Plaintiff, | : |
| v. | : |
| ANTHONY M. RAINONE, an individual; BRACH EICHLER LLC, a New Jersey limited liability corporation; JOHN P. MARTIN, an individual; XCELLENCE, INC., d/b/a XACT DATA DISCOVERY, directly and as successor-in-interest to RVM ENTERPRISES, INC., a corporation; JOHN DOES 1-10, unknown individuals; and ABC COMPANIES 1-10., unknown entities, | : : : : : : |
| Defendants. | |

**COMPLAINT
AND JURY DEMAND**

Plaintiff Acrison, Inc., by way of Complaint against defendants Anthony M. Rainone, Brach Eichler LLC, John P. Martin, Xcellence, Inc., d/b/a Xact Data Discovery, directly and as successor-in-interest to RVM Enterprises, Inc., John Does 1-10 and ABC Companies., says:

1

## PARTIES

1.    Plaintiff Acrison, Inc. ("Acrison") is a New Jersey corporation with a principal place of business at 50-52 Joseph Street, Moonachie, Bergen County, New Jersey ("Joseph Street") and 20 Empire Boulevard, Moonachie, Bergen County, New Jersey ("Empire Blvd.").

2.    Defendant Anthony M. Rainone ("Rainone") is an attorney licensed to practice law in New Jersey and is a member of defendant Brach Eichler, LLC.

3.    Defendant Brach Eichler LLC ("Brach Eichler") is a New Jersey limited liability corporation with a principal place of business at 101 Eisenhower Parkway, Roseland, Essex County, New Jersey, 07068.

4.    Defendant Xcellence, Inc., d/b/a Xact Data Discovery ("XDD") is a Kansas corporation with a place of business at 525 Washington Blvd., Jersey City, Hudson County, New Jersey. As the result of an acquisition on or about July 8, 2020, XDD is the successor-in-interest to RVM Enterprises, Inc. ("RVM"). Brach Eichler retained RVM for the computer services which form the basis of this action.

5.    Defendant John P. Martin ("Martin") is a paralegal with Brach Eichler working under the direction of Rainone for the matter described herein.

6.   John Does 1-10 are persons currently unknown to Acrison who participated in, promoted and/or conspired to commit the unlawful conduct set forth herein.

7.   ABC Companies 1-10 are entities currently unknown to Acrison that participated in, promoted and/or conspired to commit the unlawful conduct set forth herein.

## JURISDICTION AND VENUE

8.   The United States Constitution, Article III, sec. 2, vests federal courts with the authority to hear cases "arising under...the Laws of the United States."

9.   Federal law vests United States district courts with subject-matter jurisdiction over cases involving questions of federal law. *See* 28 U.S.C. § 1331.

10.  This Court has subject matter jurisdiction over this action, as claims asserted here arise under 18 U.S.C. §1030.

11.  This Court has subject matter jurisdiction over state-based statutory and common law claims under ancillary jurisdiction in that the state-based claims arise from the same core facts as the federal claims.

12.  Venue is proper in this judicial district under 28 U.S.C. §1391(b)(1)&(2) because all parties are residents of New Jersey and all the events at issue here occurred in this district.

**STATEMENT OF THE CASE**

13.   This matter involves the unauthorized hacking by all defendants of Acrison's server, and the computers of Acrison, including, but not necessarily limited to, Acrison's IT Administrator, Controller, and President.

14.   Defendants' wrongful access was accomplished late at night, and was designed to, and succeeded, in the unlawful imaging of hard drives and the unlawful capture of passwords of Acrison's President and employees. Defendants likewise hacked into the Network Share Drives of Acrison, including its President and Controller, and extracted data.

15.   Not satisfied with simple hacking, defendants used the extracted passwords to remotely access Acrison's servers and the President's computer, so they could secretly monitor his emails and activities.

16.   Among the 27,000+ files that defendants stole were confidential attorney/client communications, confidential personal identifiable information ("PII") (social security numbers) and health and retirement records of Acrison employees.

17.   The misconduct remained covered up by Rainone and Brach Eichler until the intervention of a court-appointed discovery master who compelled testimony and production of documents, exposing defendants' misconduct, the full extent of which has yet to be revealed. Rainone invoked the attorney work product privilege

4

and directed RVM not to answer questions or produce evidence about why it accessed those computers and on whose instructions.

### FACTS COMMON TO ALL COUNTS

18.  At all times relevant herein, Ronald J. Ricciardi, Sr. ("Ron"), was the founder, President, and a director of Acrison.

19.  Acrison was a closely held company with two classes of stock. All (100%) of Class A, voting stock, was owned by Ron and his wife. Ron and his wife also own 50% of Acrison's Class B, non-voting shares.

20.  At all times herein, Ralph N. Ricciardi (Ralph) was Ron's brother, Vice President and Treasurer of Acrison, a director, and a minority owner (45%) of Class B, non-voting shares. On December 20, 2021, Ralph and his wife (5% Class B owner) transferred to Acrison all non-voting shares held by them.

**A. Brach Eichler Files A Lawsuit Against Acrison and Casini And Secretly Hacks Their Computers Before and After the Suit Is Filed**

21.  On September 5, 2019, Brach Eichler, through defendant Rainone, commenced a shareholder oppression action on behalf of its clients by way of Verified Complaint entitled: *Ralph N. Ricciardi et al. v. Ronald J. Ricciardi, Sr., et als.,* Chancery Division, Bergen County, New Jersey, Docket No. BER-C-238-19 (the "Lawsuit").

22.   Rainone named Acrison's Controller, Joseph Casini ("Casini"), as a direct defendant in the Lawsuit. Casini was the Acrison Controller for over 14 years until he retired in 2019.

23.   Rainone named Acrison as a nominal defendant in the Lawsuit, making Brach Eichler's clients adverse to Acrison.

24.   Casini's office was located at the Empire Blvd. location. Casini's office maintained the electronic financial files for Acrison together with the personnel pension information and other confidential personal and employee information. Many of these records were not on the Acrison servers but were maintained on the hard drive of Casini's password-protected computer.

25.   Casini never authorized anyone to access his computer.

26.   On September 18, 2019, Rainone sought and received from the Chancery Court an Order to Show Cause. As relief, Rainone sought expedited discovery regarding Acrison's finances, W2 payroll, profit and loss and other financial data.

27.   In the same order, the Court directed that Acrison secure independent counsel by September 20, 2019, thus confirming that Acrison was adverse to Rainone and his clients.

28.   The court denied Rainone's request for expedited discovery, granting him only *copies* of Acrison's corporate books and records on or before September 27, 2019.

29.   Unknown to anyone else, the next day, September 19, 2019, Rainone, Martin, and Cheryl Ebbinghousen, a part time employee of

Acrison, issued a Change Order to RVM ordering additional services described as: "**RVM will image a workstation after 7 PM in Moonachie, NJ.**"

30.  Ebbinghousen had no authorized access to the information stored on Casini's computer and no authorized access to the Electronically Stored Information ("ESI") contained on Acrison's servers, or on the computers of Acrison's IT Administrator and President.

31.  The Court order denying Rainone emergent access to Acrison's financial records was additional confirmation that Ralph and defendants here lacked authorized access to Acrison's computers and servers.

32.  Undaunted by being rebuffed by the Court, a day after being denied expedited discovery, defendants orchestrated an on-site nighttime hack of Casini's password-protected computer.

33.  Rainone, Martin, RVM and Ebbinghousen accomplished this hack against two named defendants in the Lawsuit, one day after the Court had denied expedited discovery of all the financial disclosures. Rather than abide a Court Order and Rules of Court, defendants conducted an after-hours, on-site hack of Casini's computer.

34.  The Lawsuit then proceeded in the normal course for Chancery actions, which included defendants serving document demands on plaintiffs.

7

**B. Appointment of Custodial Receiver for Acrison — Honorable Alexander H. Carver, III (Ret.)**

35.   On or about November 8, 2019, Acrison learned of circumstances it believed warranted termination of Ralph Ricciardi and his three adult children.

36.   On December 2, 2019, Acrison issued termination letters to Brian Ricciardi, Robert Ricciardi and Cheryl Ebbinghousen, and a suspension letter to Ralph Ricciardi.

37.   On December 12, 2019, in response to Ralph Ricciardi's application for reinstatement of himself and his children and an appointment of a receiver for Acrison, the Honorable James J. DeLuca partially granted the application and appointed the Honorable Alexander H. Carver, III, J.S.C. (Ret.) as custodian of Acrison with fact-determining powers.

38.   The Court enjoined Ralph and his children "from taking any action with respect to Acrison and/or its employees, customers or business activities unless specifically requested in writing by Judge Carver."

**C. Brach Eichler Produces Electronically Stored Information ("ESI") That Cannot Be Accessed - Brach Eichler Refuses To Disclose How the ESI Was Procured, Preserved and Produced**

39.   On or about March 17, 2020, Rainone provided two sharefile links to documents, the origins of which were not disclosed.

40.   The first link appeared to be electronic copies of pdf files. The second link was to what purported to be ESI. The ESI sharefile link could not be accessed.

41.   Acrison made repeated email requests to Brach Eichler for assistance in accessing the ESI link, but Rainone insisted the problem was on Acrison's end and suggested attempting to download the sharefile overnight because the sharefile site provide by Rainone was "getting massive traffic." Acrison also requested the ESI link be provided in a CD or thumb drive, but Brach Eichler refused.

42.   By letter to Rainone dated March 25, 2020, Acrison again raised access issues and asked if documents that he produced were duplicative of financial records that Acrison's accountants, Clyne Eagan, had already produced.

43.   By reply letter dated April 3, 2020, Rainone refused to respond, telling counsel to make the comparisons herself. Rainone failed to disclose when and how he obtained the ESI.

44.   Despite numerous requests for the data to be provided on a thumb drive, Rainone continued to refuse.

45.   At this point, Acrison still had no access to the ESI and no idea that Rainone had already conducted on-site hacking on two occasions, and remote access on a still-unknown number of times. Much later, Acrison learned that Rainone did not produce ESI from his clients' files; rather, he produced ESI that had been

extracted from Acrison's servers and computers pre-litigation. Later still, Acrison learned Rainone had accessed Acrison computers, including hard drives, while the Lawsuit was pending.

46.  In May 2020, counsel in the Lawsuit conducted a meet-and-confer where Acrison again raised problems with access and requested that the metadata and information be produced on a flash drive. Instead, Rainone referred to a zip file that Brach Eichler created that contained no metadata for the original ESI. Rainone acknowledged a "pre-litigation" investigation, but provided no details, claiming the work product privilege.

47.  At the deposition of a third-party witness in October 2020, the issue again arose as Brach Eichler attempted to use a document that its clients should never have possessed. This document was confidential and existed only on the hard drive of Acrison's President, a named adverse party. At this point, Brach Eichler disclosed that thousands of pages of ESI were gathered as part of a "pre-litigation" investigation and that the ESI had been produced in discovery.

48.  On November 5, 2020, at another meet and confer, Acrison sought the foundation for documents and recordings produced by Brach Eichler and how the information was procured, preserved and produced.

49.  In November 2020, Acrison finally secured access to some of the ESI produced by Brach Eichler, but not all. Moreover, Brach

Eichler did not produce the original metadata accompanying the ESI.

50. On November 11, 2020, Acrison again requested a fully accessible production, including metadata. Rainone continued to maintain that all the data was produced including the metadata.

51. As of November 16, 2020, Acrison again requested that Rainone produce the metadata for all ESI as originally extracted, provide access to the documents that could not be accessed and identify any documents taken from Acrison's offices, computers, or premises. Acrison suggested that the matter be forwarded to Judge Carver, the Court appointed Custodial Receiver for Acrison, to be addressed, but Rainone refused.

52. Acrison made multiple requests of Rainone to explain where he had gotten the ESI. He refused to disclose.

53. The ESI raised many questions, including where the information came from.

54. Part of the production included 68 Native files, each containing about 900 documents. Hundreds of documents contained inaccessible Excel spreadsheets. For the first time, Acrison began to suspect, but could not prove, that plaintiffs might have hacked Acrison's computers.

55. Ultimately, Acrison raised this discovery issue, along with others, to the Chancery judge.

**D. Appointment of Special Discovery Master – Honorable Harry G. Carroll, J.A.D. (ret.)- Brach Eichler Finally Disclosed Identity of Third-Party Vendor-RVM**

56.   In response, on November 17, 2020, the Chancery court appointed the Hon. Harry G. Carroll, J.A.D. (ret.) as special discovery master.

57.   By letter to Judge Carroll dated November 19, 2020, Acrison sought a ruling, *inter alia,* to compel Brach Eichler to disclose how it obtained what appeared to be stolen information.

58.   On November 23, 2020, Brach Eichler provided a sharefile that purportedly contained metadata, but it was not the original metadata from the forensic image. In addition, Rainone said he would produce the ESI, but only after Thanksgiving, and still only in the format originally produced, which Acrison could not access and which was not the forensic image.

59.   By certification dated November 24, 2020, Ralph certified that he had gotten the ESI in a pre-ligation investigation by accessing Acrison's computers. This certification later proved to be false, in its failure to disclose data gathered in the post-litigation hack.

60.   Ralph did not explain when he accessed the computers, how he accessed them, or how many times, but asserted he had a right to do so. He certified (ultimately shown to be false) that he preserved the ESI in the same format as he obtained it.

61.   Judge Carroll ruled that Brach Eichler must respond to several simple questions about the ESI, including who did the data extraction; where it was accomplished, and when it was accomplished. Judge Carroll ordered Rainone to disclose the third-party vendor used to extract the ESI.

62.   On December 11, 2020, Rainone advised that the ESI vendor used for "pre-suit" was RVM. Rainone never disclosed accessing the Acrison computers after the Lawsuit was filed.

63.   In responding to the ESI Questions posed as directed by Judge Carroll, Rainone forwarded a letter dated December 21, 2020, stating that RVM (now defendant XDD) had done the extraction between May 22 and 30, 2018. As it turned out later, this representation was untrue.

64.   Interesting enough, Rainone noted that RVM no longer had the extracted data, even though Rainone was under a duty to preserve evidence in a litigation he started.

65.   As discovered later, Rainone misled Acrison about when RVM did the extraction. At no time did Rainone disclose that he had secured passwords and was remotely monitoring Acrison's servers, along with the President's and Controller's computers.

66.   Rainone never disclosed that he had accessed Casini's computer two (2) weeks after suing him, and on the day after Rainone appeared in the Chancery court and was denied expedited financial discovery.

67.   In response to Rainone's letter of December 21, 2020, Acrison issued a deposition subpoena to RVM.

### E. Brach Eichler's Third Party Vendor RVM's Documents and Testimony Produced In Response to Subpoena

68.   In reply to the subpoena, Rainone moved before Judge Carroll to quash Acrison's attempt to depose a representative of RVM.

69.   Rainone's recalcitrance compelled Acrison to retain a computer expert to determine whether Brach Eichler's ESI production "was representative of a forensic copy or forensic image of the data that RVM forensically imaged and copied from Acrison's network allegedly between the dates of May 22, 2018 and May 30, 2018."

70.   Acrison's expert concluded that Rainone's production did not include a forensic preservation of the extracted ESI or the accompanying metadata. Rather, the production was made in .DAT files, where forensic preservation does not result in .DAT files.

71.   In addition, the expert noted that the ESI contained files with "created dates" *after* May 30, 2018, the date Rainone had attested was their extraction.

72.   The expert concluded that Rainone's December 21, 2020 representation to Judge Carroll that "essentially all forms of ESI, including the metadata" were produced was untrue. This was because RVM's forensic work product was missing, many of the load

files did not contain expected metadata fields, there was no file path field to confirm where the data came from or how it was stored, nor was there any reference to .PST format, which are standard for anyone, like Acrison, using Outlook for emails.

73.  The expert stated that Rainone had not produced "a legally defensible forensic preservation," and noted that based on what Rainone provided, it was unclear where, when and how the ESI was extracted.

74.  Over Rainone's objection, on January 19, 2021, Judge Carroll ordered RVM to produce documents and permitted Acrison to depose a representative of RVM.

75.  On or about January 27, 2021, RVM produced about 132 documents in response to Acrison's subpoena.

76.  The document production revealed that on May 8, 2018, Brach Eichler via John P. Martin entered into a Forensic Services Agreement with RVM ("RVM Agreement").

77.  The RVM Agreement identified Rainone as the Project Manager.

78.  The RVM Agreement broke its services into Phases.

79.  In Phase I, Rainone authorized RVM to "create a full forensic issue of a company computer belonging to Domain Admin." Rainone further authorized RVM to bring the forensic image back to RVM's lab to recover passwords and log-in information.

80.  In Phase 2, Rainone authorized "Remote VPN access [into] Acrison, Inc. then map and image the paths and execute email export commands [and] perform the collection after hours."

81.  In sum, Rainone retained RVM to secretly hack the computer of Acrison's Administrator, recover passwords, and remotely access Acrison's server and the computers of Acrison's President and Controller *after* normal business hours.

82.  The RVM Agreement expressly voids the warranty of its work if Brach Eichler was involved with "unauthorized access." Thus, RVM expressly acknowledged that unauthorized access would be problematic, and so put Rainone, Martin and Brach Eichler on notice.

83.  An email between RVM and Brach Eichler revealed that Brach Eichler and RVM arranged to meet on premises at Acrison's Empire Blvd. site to "extract" data at 9:00 p.m. on Thursday, May 17, 2018, between 9:00 p.m. and 10:30 p.m.

84.  The document production further revealed that on June 28, 2018, Brach Eichler instructed RVM to send to Brach Eichler: (a) all of Casini's (the Controller) emails if located on the network share data; (b) all Casini's share data; (c) all Ron's emails; and (d) all Ron's "share data on hold with the exception of any email found."

85.  RVM produced a list of some of the records it copied, which included: unredacted employee social security numbers;

attorney/client email communications; confidential health information; and retirement account activities.

86.   RVM also produced a service "Change Order" executed by Brach Eichler on September 19, 2019, two weeks *after* Rainone commenced the Lawsuit.

87.   In that Change Order, Rainone and Brach Eichler authorized RVM to "image a workstation after 7 PM in Moonachie, NJ."

88.   RVM produced a "Cancellation of Services Agreement" with Brach Eichler revealing that on April 22, 2020, while the Lawsuit was pending, Brach Eichler terminated RVM's services.

89.   RVM advised Brach Eichler that "RVM is not obligated to nor will it retain any archive or backup copy of Client's stored/hosted by this CSA data in any form, unless Client has elected archival services..."

90.   Brach Eichler did not select archival services; meaning, that amid litigation, it knowingly risked RVM destroying the entirety of its work product before Acrison knew about it.

91.   On Friday, January 29, 2021, Acrison conducted the Zoom deposition of Evan Fuest ("Fuest") of RVM. Rainone appeared as counsel for RVM and Fuest.

92.   Fuest testified that despite the cancellation order, he believed all RVM's work product was archived and should be

restorable. However, RVM did not search for that information in advance of the deposition, and Acrison has never seen it.

93.   Fuest confirmed that on May 17, 2018, at 9:00 p.m., he met with a representative from Brach Eichler (defendant Martin) and an "older gentleman" (presumably Ralph) at Acrison's Empire Blvd. facility. Rainone directed Fuest not to answer the question about why 9:00 p.m. was chosen for the extraction.

94.   Fuest testified that he brought with him a forensic duplicator and an external hard drive. Martin and the "older gentleman" escorted Fuest to a desktop computer, the owner of which he could not recall. RVM records show that they escorted him to the computer of Acrison's IT Director, John Dumont.

95.   Fuest testified that with the computer powered down, he extracted the hard drive and disconnected it from the machine. Next, Fuest attached the hard drive to his forensic duplicator and made an exact image of all the data on the computer's hard drive. He returned the hard drive to Dumont's computer.

96.   Fuest photographed the computer and desk area, along with network information so he could later remotely access the computer.

97.   Fuest testified that RVM had, in fact, accessed Acrison computers remotely, per Phase II of Brach Eichler's request.

98.   When he accessed Acrison's computers remotely, Fuest said he created a report with listings such as file paths of what

data was available, and he collected information requested by Brach Eichler.

99.  Rainone refused to allow Fuest to answer what information Brach Eichler had requested.

100.  Fuest admitted that he had forensically imaged the hard drive of an IT "Administrator" at Acrison. He acknowledged that an Administrator's computer is a "high level account" with "permissions to connect or access things."

101.  Fuest acknowledged that he extracted passwords from the Administrator's account, along with server passwords, all related to Acrison's technology infrastructure.

102.  Fuest photographed one of Acrison's servers, which he said might be "helpful" to him when remotely accessing Acrison's computer system. Fuest also testified that he left no evidence exposing what he had done that night.

103.  When Fuest accessed Acrison's servers remotely, he "targeted folders somewhere in the network," but could not say what he targeted unless archived information was resurrected.

104.  Fuest admitted that he had also remotely accessed the computers of Acrison and extracted data, including those of the President and Controller.

105.  A supplemental document production by RVM revealed that on September 19, 2019, two weeks *after* commencing the Lawsuit, Brach Eichler ordered RVM to return to Acrison and image Casini's

hard drive computer. RVM accomplished this assignment after hours, at 7:30 p.m.

106. Rainone had not disclosed this event to anyone: not to his adversaries, not to the court, not to the Custodial Receiver and not to Judge Carroll, the court-appointed discovery master. Rainone ordered this extraction against a named defendant in pending litigation.

107. After Fuest's testimony, it was clear that defendants had not produced all the records ordered by the Special Discovery Master.

108. Rainone finally admitted that information was missing, and on or about February 17, 2021, produced a drive which he represented to be a copy of the original forensic data.

109. Acrison's expert was unable to confirm Rainone's representation, as RVM produced no required chain of custody, and one record noted that Casini's data was accessed on January 26, 2021, just three days *before* Fuest's deposition.

**F. The Parties Proceed to Mandatory Mediation and Settlement But Obligations Regarding Acrison's ESI Remain**

110. Parties to the Lawsuit engaged in court-ordered mediation, which resulted in a signed term sheet agreement in March 2021.

111. On December 2, 2021, parties to the Lawsuit executed a formal settlement agreement, with ancillary notes, mortgages and corporate documents required.

112. The settlement agreement included mutual releases among the parties for known claims but excluded releases for attorneys and third parties. Rainone had asked for a release of counsel, which Acrison refused.

113. The settlement agreement addressed the ESI issue, whereby Brach Eichler promised:

15. **Immediate Return of All Acrison Electronically Stored Information, Recordings and Documents**: Within 10 days of the Effective Date, Brach Eichler, at Acrison's cost and expense, not to exceed $1,500.00, shall deliver to Acrison, all documents, records, recordings and electronically stored information ("ESI") copied and extracted by RVM or anyone else in connection with the pre-litigation and litigation activities in the above referenced matters. Upon request by Acrison, and within ten (10) days thereafter, Ralph's attorneys shall direct the destruction of any copies of the ESI referenced above and in the possession of Brach Eichler, Citrin Cooperman, RVM, Ralph, any of his agents or representatives and any of his children, all of whom shall provide a certification of destruction from the applicable person or entity to Acrison. RVM and Brach Eichler shall retain and not destroy any other alleged work product documents and communications they claim are privileged which they have not produced, or they have redacted and shall preserve same in the original form. No documents involving Brach Eichler and RVM regarding Acrison's ESI should be destroyed, altered or modified. By retaining these documents, Brach Eichler and the Plaintiffs do not waive their claim of work/product doctrine and Acrison does not waive its right to challenge the alleged privilege assertion.

**G. Brach Eichler Wrongfully Directs the Destruction of ESI**

114. By email dated January 4, 2022, Acrison reminded Rainone of his obligations to comply with paragraph 15 of the settlement agreement, asking: "[p]lease attend to the immediate return of all Acrison ESI, recordings and documents."

115. In response, by email dated January 5, 2022, Rainone stated that when the settlement down-payment reached his trust account, "we will fulfill our obligations."

116. By reply email on January 6, 2022, Acrison reminded Rainone that paragraph 15 imposed an obligation upon Brach Eichler independent of payment obligations under the settlement agreement.

117. On January 17, 2022, Acrison again asked Rainone to comply with paragraph 15.

118. By email dated January 24, 2022, Rainone's associate advised Acrison that "[a]s to paragraph 15 of the Settlement Agreement, we will be providing you with the information required under the Settlement Agreement tomorrow. Anthony [Rainone] is on a plane and we expected him to be back sooner. In any event, we will send you everything tomorrow."

119. By reply email on January 25, 2022, counsel for Acrison wrote: "I am awaiting delivery of the documents, records, recordings and ESI. Please advised as to the time you anticipate delivery."

120. Despite Rainone's express representation to comply with paragraph 15, the required information was never delivered.

121. Instead, by letter dated January 25, 2022, Rainone provided a certification from one of his experts stating that "[o]n January 18, 2022, Citrin was instructed by Brach Eichler LLC to destroy and purge all documents, ESI and any copies in Citrin's possession received in connection to the above referenced matter as an expert on behalf of Plaintiffs."

122. Similarly, Rainone provided a "Certificate of Destruction" from defendant XDD certifying that on January 19, 2022, Acrison's ESI "has been deleted from every XDD network segment from our Dallas, TX Data Center and I have personally deleted each data set accordingly."

123. At no time did Acrison request the destruction of evidence. To the contrary, it made repeated requests of Rainone and Brach Eichler to surrender such evidence.

124. Fully aware of breaching its contractual obligations, Brach Eichler knowingly and maliciously ordered the destruction of the evidence which would conclusively demonstrate when, where and how defendants hacked Acrison's servers and computers.

125. By email to Rainone dated January 31, 2022, the custodial receiver, Judge Carver, noted:

> **It appears that contrary to the specific provisions of paragraph 10 [sic] of the Settlement Agreement in this matter (above), rather than being returned to Acrison,**

the "documents, records, recordings and electronically stored information ('ESI')" are said to have been destroyed.

Please immediately cease and desist the destruction of any such materials and immediately advise any vendors, experts, or other holders of such materials also to immediately cease and desist the destruction of any such materials, and deliver them to Acrison as agreed.

Your immediate compliance is expected.

126. Defendants neither responded nor complied.

**H. Ralph Ricciardi's Violation of Acrison's Computer Policies**

127. In his capacity as an officer and salaried employee of Acrison, Ralph was subject to Acrison's computer-related policies.

128. These computer policies are set forth in the Salaried Employee Handbook ("Handbook").

129. Ralph signed an acknowledgement for being in receipt of this Handbook.

130. As a director and shareholder of Acrison, Ralph owed Acrison a fiduciary duty to honor the Company's policies, above and beyond his obligations to honor those policies in his capacity as an officer and salaried employee.

131. The Handbook provides: *PCs, peripherals, interconnections and software will be installed or changed by ACRISON IT (Information Technology) personnel, or their designee(s), or by outside contracted IT personnel only. Employees are prohibited from removing or repositioning PCs and/or peripherals without prior approval and are encouraged to request*

*IT assistance in all instances where equipment is to be moved in any way.*

132. The Handbook further provides: *In the course of its daily Business, certain departments are required to make copies of electronic files for a variety of purposes. In these departments, one or two individuals have been designated as having authority to make such copies. Employees who have not been authorized to do so are prohibited from making copies of any ACRISON files and from transmitting them electronically in any manner.*

133. The Handbook further provides: *Employees having laptop computers, or PDAs of various types, are not permitted, nor will they be provided with, direct connection to ACRISON networks. Connection of devices of this sort, if approved by Management, will be limited to connection to a desktop PC via standard serial COM ports only.*

134. The Handbook further provides: *Employees are provided with individual system access passwords. It is expected that these passwords will be kept confidential. If an employee suspects that this confidentiality has been compromised in any way, he or she should report this to IT immediately.*

## FIRST COUNT
### (Computer Fraud and Abuse Act)

135. Acrison repeats and makes a part hereof the allegations contained in paragraphs 1-134.

25

136. The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030(a)(2)(C) subjects to liability any person who "intentionally accesses a computer or exceeds authorized access and thereby obtains...information from any protected computer."

137. Data extracted by defendants from Acrison's servers and from the computers of Acrison's President, Controller and IT director is "information" within the meaning of 18 U.S.C. §1030(a)(2)(C).

138. The CFAA, 18 U.S.C. §1030(a)(5)(C) subjects to liability any person who "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss."

139. The CFAA, 18 U.S.C. §1030(g) provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."

140. The CFAA, 18 U.S.C. §1030(g) further provides that "[a] civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III) (IV), or (V) of subsection (c)(4)(A)(i)."

141. Acrison is a "person" within the meaning of 18 U.S.C. §1030(e)(12).

142. Acrison's servers, along with the individual computers of the IT Administrator, the President and the Controller are "protected computers" within the meaning of 18 U.S.C. §1030(e)(2)(B) and (C)(ii)(II) in that all those computers and servers are used in and affect interstate and foreign commerce and communications.

143. Rainone, Brach Eichler, XDD, RVM and Martin were not authorized users of Acrison's computers and servers.

144. As he expressly acknowledged in receipt of the Handbook, Ralph N. Ricciardi knew: (a) Acrison's IT Administrator or his designee was solely responsible to install or change interconnections; (b) he was not designated and thus prohibited from making copies of or transmitting electronic files; (c) he was prohibited from direct connection to Acrison's servers other than via desktop PC approved by management; and (d) he owed a duty to report any compromise of passwords, which he failed to do.

145. Thus, Ralph N. Ricciardi was not an authorized user of Acrison's servers, nor was he an authorized user of the computers used by the IT Administrator, the President and the Controller, and/or he exceeded his authorized access.

146. Cheryl Ebbinghousen was not an authorized user of Acrison's servers, nor was she an authorized user of the computers used by the IT Administrator, the President and the Controller.

147. Cheryl Ebbinghousen had no authorized access to information housed on Acrison's servers, and no authorized access to information on the computers used by the IT Administrator, the President and the Controller.

148. Rainone, Brach Eichler, XDD, RVM and Martin repeatedly violated 18 U.S.C. §1030(a)(2)(C) through the intentional access of Acrison's protected servers and computers without authorization and thereby obtained information from Acrison's protected servers and computers.

149. Defendants' repeated and intentional unlawful access fits within the parameters set forth at 18 U.S.C. §1030(g), and caused financial loss to Acrison in excess of $5,000 in value as required by 18 U.S.C. §1030(c)(4)(A)(i)(I), arising from: including but not limited to, investigation expenses, expert costs, discovery master fees and legal fees in uncovering the misconduct.

150. Because Ralph N. Riccardi had no authorized access to the subject servers and computers and/or exceeded his authorized access to those servers and computers, Rainone, Brach Eichler, Martin and XDD cannot find safe harbor from liability.

151. Rainone's justification for his misconduct that Ralph N. Riccardi, as minority shareholder, director and officer could have asked for and received some of the extracted data is of no avail.

28

152. In *Van Buren v. United States,* 141 S.Ct. 1648 (2021), the United States Supreme Court ruled that "[t]he statute is *concerned with* what a person does on a computer, **it does not excuse hacking into an electronic personnel file if the hacker could have walked down the hall to pick up a physical copy.**" (emphasis added).

153. Here, it is undisputed that Rainone, Brach Eichler, XDD, RVM and Martin physically hacked the computer of Acrison's Administrator, imaged the hard drive, and captured the passwords of the IT Administrator, President and Controller, along with social security numbers of employees, attorney/client communications, health records and retirement information.

154. It is similarly undisputed that Rainone, Brach Eichler, XDD and Martin remotely monitored the President's and Controller's computer and Acrison's servers.

155. Rainone and Brach Eichler knowingly misled the court and counsel about its conduct and failed to disclose the whole truth when ordered to do so.

156. Rainone intentionally authorized the potential destruction of ESI when it terminated RVM's contract.

157. The fact that Rainone, Brach Eichler, XDD and Martin conducted their physical hacks remotely and at night demonstrates knowing and purposeful misconduct and the lack of authority to do so.

158. Rainone's and Brach Eichler's failure to disclose the whole truth of its misconduct and the ensuing cover-up demonstrate knowing and purposeful misconduct and lack of authority.

159. Rainone's, Brach Eichler's, XDD's and Martin's hack into Casini's computer *after* suing him and Acrison and *after* the Court denied expedited financial discovery, demonstrates knowing and purposeful misconduct.

160. As a result of defendants' violations of 18 U.S.C. §1030, Acrison has suffered a "loss" within the meaning of 18 U.S.C. §1030(e)(11).

WHEREFORE Acrison, Inc. demands judgment in its favor and against defendants Anthony M. Rainone, Brach Eichler LLC, Xcellence, Inc., d/b/a Xact Data Discovery, directly and as successor-in-interest to RVM Enterprises, Inc., and John P. Martin for compensatory damages, equitable relief and costs of suit.

## SECOND COUNT
### (Conspiracy to Violate Computer Fraud and Abuse Act)

161. Acrison repeats and makes a part hereof the allegations contained in paragraphs 1-160.

162. The CFAA, 18 U.S.C. §1030(b) subjects to liability any person who "conspires to commit or attempts to commit an offense under subsection (a)."

163. Rainone, Brach Eichler, XDD, Martin, Ralph N. Ricciardi, Cheryl Ebbinghousen and others agreed to engage in the misconduct noted above.

164. Rainone, Brach Eichler, XDD, Martin and others took steps to implement and did implement a complex and thorough unlawful scheme in violation of the CFAA.

165. As a result of defendants' unlawful conspiracy, Acrison has suffered a "loss" within the meaning of 18 U.S.C. §1030(e)(11).

WHEREFORE Acrison, Inc. demands judgment in its favor and against defendants Anthony M. Rainone, Brach Eichler LLC, Xcellence, Inc., d/b/a Xact Data Discovery, directly and as successor-in-interest to RVM Enterprises, Inc., Inc. and John P. Martin for compensatory damages, equitable relief and costs of suit.

### THIRD COUNT

**(New Jersey Computer Related Offenses Act)**

166. Acrison repeats and makes a part hereof the allegations contained in paragraphs 1-165.

167. The New Jersey Computer-Related Offense Act ("CROA"), N.J.S.A. §2A:38A-3(a), declares unlawful "[t]he purposeful or knowing, and unauthorized...taking or destruction...of any data, data base, computer software or computer equipment existing internally or externally to a computer system or computer network."

168. CROA, at N.J.S.A. §2A:38A-3(c), declares unlawful "[t]he purposeful or knowing, and unauthorized accessing or attempt to access any computer, computer system or computer network."

169. Rainone, Brach Eichler, Martin and XDD accessed Acrison's server and computers within the meaning of N.J.S.A. §2A:38A-1(a).

170. Acrison's servers and individual computers are "computers" and "computer equipment" within the meaning of N.J.S.A. §2A:38A-1(b) and (c).

171. The information accessed by defendants is "data" within the meaning of §2A:38A-1(h).

172. Rainone, Brach Eichler, Martin and XDD were not authorized users of Acrison's server and computers.

173. Ralph N. Ricciardi was not an authorized user of Acrison's servers and computers and/or exceeded his authorized access.

174. Rainone, Brach Eichler, Martin and XDD engaged in the purposeful, knowing and unauthorized "taking" of data, data base and computer software within the meaning of N.J.S.A. §2A:38A-3(a) by virtue of two known on-site hacking events and remote monitoring and downloading of data from Acrison's servers, the Administrator's, President's and Controller's computers.

175. Rainone, Brach Eichler, Martin and XDD engaged in the purposeful, knowing and unauthorized "destruction" of data within

the meaning of N.J.S.A. §2A:38A-3(a) by virtue of destroying data while litigation was pending and by the destruction of data post-litigation, contrary to a contractual promise to return that data to Acrison.

176. Rainone, Brach Eichler, Martin and XDD engaged in the purposeful, knowing and unauthorized "accessing" of data within the meaning of N.J.S.A. §2A:38A-3(c).

177. Acrison was damaged in its business and property by defendants' conduct within the meaning of N.J.S.A. §2A:38A-3 through, among other things, investigation expenses, expert fees, legal fees, discovery master fees, deposition fees and attendant costs.

178. Pursuant to N.J.S.A. §2A:38A-3, Acrison is entitled to recover compensatory damages, punitive damages and attorneys' fees, costs of suit, and costs of investigation and litigation.

WHEREFORE Acrison, Inc. demands judgment in its favor and against defendants Anthony M. Rainone, Brach Eichler LLC, Xcellence, Inc., d/b/a Xact Data Discovery, directly and as successor-in-interest to RVM Enterprises, Inc., and John P. Martin for compensatory damages, punitive damages, attorneys' fees, investigation and litigation costs.

## FOURTH COUNT

### (Trespass to Personal Property)

179. Acrison repeats and makes a part hereof the allegations contained in paragraphs 1-178.

180. Rainone, Brach Eichler, Martin and RVM physically and remotely entered Acrison's technology property without authorization.

181. Rainone, Brach Eichler, Martin and RVM injured and interfered with Acrison's technology.

182. As a result of defendants' misconduct, Acrison has been damaged.

WHEREFORE Acrison, Inc. demands judgment in its favor and against defendants Anthony M. Rainone, Brach Eichler LLC, Xcellence, Inc., d/b/a Xact Data Discovery, directly and as successor-in-interest to RVM Enterprises, Inc., and John P. Martin for compensatory damages, investigation and litigation costs.

## FIFTH COUNT

### (Conversion)

183. Acrison repeats and makes a part hereof the allegations contained in paragraphs 1-182.

184. The ESI taken by defendants belonged to Acrison.

185. Defendants taking was done willfully.

186. Defendants repudiated Acrison's right of possession to the ESI taken by exercising dominion and control over the ESI and failing to return it, or even disclose its possession.

187. As a result of defendants' unlawful taking, Acrison has been damaged.

WHEREFORE Acrison, Inc. demands judgment in its favor and against defendants Anthony M. Rainone, Brach Eichler LLC, Xcellence, Inc., d/b/a Xact Data Discovery, directly and as successor-in-interest to RVM Enterprises, Inc., and John P. Martin for compensatory damages, punitive damages, and investigation and litigation costs.

KEARNEY LAW LLC
*Attorneys for plaintiff Acrison, Inc.*

By: *Dennis T. Kearney*
　　　DENNIS T. KEARNEY

DATED: March 3, 2022

## JURY DEMAND

Plaintiff Acrison, Inc. demands a trial by jury of all issues so triable as a matter of right.

KEARNEY LAW LLC
*Attorneys for plaintiff Acrison, Inc.*


By: **_Dennis T. Kearney_**
DENNIS T. KEARNEY

DATED: March 3, 2022